IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GABRIEL BROWN,                              )
                                            )
              Plaintiff,                    )      Case No.  1:20 CV 06762
                                            )
v.                                          )      Judge Robert W. Gettleman
                                            )
MRS BPO, LLC,                               )
                                            )
              Defendant.                    )

## MEMORANDUM OPINION & ORDER

Plaintiffs Judith Leavell and Gabriel Brown brought a seven-count complaint against defendant MRS BPO, LLC ("MRS") alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  Plaintiff Judith Leavell later moved to dismiss her own claims (Counts I–III) against MRS.  In Counts IV–VII, plaintiff Gabriel Brown alleges that defendant violated various provisions of the FDCPA: sections 1692d, 1692d(5), 1692d(6), and 1692e, respectively.  Plaintiff Brown ("plaintiff") and defendant cross-move for summary judgment on all remaining counts.  Defendant also argues for dismissal of certain claims based on lack of subject matter jurisdiction.  For the reasons stated below, plaintiff's motion (Doc. 33) is denied, and defendant's motion (Doc. 34) is granted in part and denied in part.

## BACKGROUND

When Judith Leavell ("Leavell") became delinquent with respect to certain debts, including a debt from a Mercury Credit Card, Security Credit Services, LLC, retained defendant to collect the debt.  The parties do not dispute that defendant "regularly attempt[s] to collect, directly or indirectly, debts asserted to be owed another."  When defendant received the account for collection on September 29, 2020, Security Credit Services indicated to defendant that

1

Leavell could be reached at a telephone number ending in the digits 3906.  Between September 30, 2020, and November 11, 2020, defendant placed 17 calls to the telephone number ending in the digits 3906 in its attempt to contact Leavell.  Defendant produced records of these phone calls in response to Leavell's request that defendant produce "any telephone call placed by Defendant for the purpose of collecting a debt allegedly owed by Plaintiff."

Plaintiff Gabriel Brown is Leavell's daughter and brings this case because she alleges that defendant contacted her multiple times.  Plaintiff asserts that defendant called her telephone number, ending in the digits 3906, 17 times to locate Leavell regarding her debt.  Defendant disputes the purpose of these calls.  Plaintiff notes that when she received these calls from defendant, the caller identification device displayed the numbers (312) 637-4619 and (312) 637-4656 and nothing else.  Because the numbers contained a local Chicago area code, plaintiff complains that she interrupted her self-employment to answer defendant's calls.  If defendant had caused an out-of-state telephone number, or defendant's name, to appear on her caller identification device, plaintiff alleges that she would not have answered the calls.

Defendant does not dispute that it used the local Chicago area code of (312) to call plaintiff, despite its corporate office being in Cherry Hill, NJ, with secondary locations in Westerville, OH, and Dothan, AL.  In fact, Defendant produced a list of the 17 calls that confirms them.  This list includes a "Contract From" category indicating that a "(312) 637-XXXX" number was used with respect to all 17 calls and a "Contact Target" category indicating plaintiff's telephone number.

Yet the parties dispute the outcomes and significance of defendant's telephone calls to plaintiff.  In two instances, the calls were abruptly ended, but each party alleges that the other was responsible for the disconnection.  Defendant's telephone call lists indicate that its calls to

2

plaintiff's phone on October 14, 2020, at 12:36 PM, and November 2, 2020, at 4:00PM, had an "Outcome" of "Caller Abandoned." In other words, the defendant's lists suggest that plaintiff hung up on defendant's representatives prior to being connected with an agent. Plaintiff, on the other hand, asserts that she did not disconnect these calls; rather, she indicates that defendant's representatives disconnected the calls. Further, plaintiff asserts that defendant disconnected the calls without first making any statement to her.

In two additional instances, the parties dispute various aspects of the only telephone calls that resulted in a connection between defendant and a recipient.[1] Defendant produced a recording of a telephone call from October 27, 2020, during which the recipient of the call indicated that, "I will have my attorney contact you guys [and] my attorney will be contacting you guys, thank you, cause you're violating the FCRA," in response to the defendant's representative's indication that "My name is Donald Tucker. I'm trying to reach Judith Leavell." Defendant again called the 3906 number twice on October 28, 2020, and eight additional times between October 8, 2020, and November 11, 2020. A telephone call from November 11, 2020, also resulted in a connection. During the November 11, 2020, call, the recipient stated,

> "Okay. I've asked you guys now twice not to call this phone and I told you guys that I would refer it to an attorney . . . so now because I've asked you guys that now twice not to call and you guys continue to call . . . I will be forwarding this to an attorney. So, MRS associates, correct?"

In response to this statement, the MRS representative indicated, "That's correct." After this call, defendant did not place any additional calls to the telephone number ending in 3906. After the November 11, 2020, call, the MRS representative marked Leavell's file to reflect that

---

[1] While plaintiff asserts that she answered these calls, defendant argues that the calls were answered by an individual who did not identify herself. Defendant does not appear to pursue this argument in its cross-motion for summary judgment.

no additional calls should be placed to that telephone number. Defendant closed Leavell's file less than one week later, on November 17, 2020.

Defendant is the exclusive owner of the telephone numbers used to place calls in connection with Leavell's debt on the indicated account, including the calls to the telephone number ending in the digits 3906. If anyone were to place a call to these numbers, such a call would be directly connected with the defendant.

On November 13, 2020, Leavell commenced this action against defendant alleging violations of the FDCPA. Approximately five months later, Leavell filed an amended complaint which added Gabriel Brown as a plaintiff. Unlike the original complaint, the amended complaint does not allege that Leavell answered the calls placed by MRS but instead alleges that defendant attempted to collect Leavell's debt by calling plaintiff Brown. Plaintiff Leavell moved the court to dismiss her own claims against defendant, which the court granted on August 12, 2021.

On July 28, 2021, during discovery, plaintiff Brown gave sworn testimony in a deposition that defendant contends is inconsistent with plaintiff's post-deposition affidavit, which is attached to plaintiff's cross-motion. During plaintiff's deposition, plaintiff testified that, "if you tell them to stop calling, under my consumer rights, they have to stop calling." When asked to identify the dates that she received telephone calls from defendant, plaintiff testified that she did not "remember the specific dates" but "just know[s] that it was sometime in the fall of 2020." Plaintiff stated that she did not remember what information appeared on her caller identification system when she received calls from defendant, where defendant was located when it placed

calls to her, which telephone numbers defendant used to contact her, or the debt that defendant was attempting to collect from Leavell.

Conversely, in plaintiff's affidavit, signed August 1, 2021, plaintiff indicates arguably inconsistent facts. She indicates that she reviewed the discovery documents in this case, and having "refresh[ed her] recollection of telephone calls that [she] received last fall," recalls having received calls displaying the numbers (312) 637-4619 and (312) 637-4656 and nothing else on her caller identification system, on October 14, 2020, and November 2, 2020, respectively. Plaintiff states, "Both of these calls and hung-ups were annoying to me and stressed me to the point that I shook."

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to show that there is no genuine dispute of material fact preventing the entry of judgment in its favor as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Supreme Court has determined that a fact is "material" when it may affect the outcome of the suit under the governing law and the dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court's function is limited to determining whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a jury for resolution at trial. See id. at 249. The court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the

nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586.  Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Where, as here, both parties file motions for summary judgment, the court applies the same standards of review.  See Wis. Alumni Research Found. v. Xenon Pharm., Inc., 591 F.3d 876, 882 (7th Cir. 2010).  The court views all facts and inferences in the light most favorable to the nonmovant on each motion, on an individual and separate basis.  Id.  The existence of cross-motions does not imply that there are no genuine issues of material fact.  See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003).  Because parties have different burdens of proof with respect to particular facts, different legal theories impact which facts are material.  Id.  "The process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." Id. at 648.

## DISCUSSION

Both plaintiff and defendant cross-move for summary judgment on all remaining counts (Counts IV–VII).  In support of her cross-motion, plaintiff argues that she has presented sufficient evidence so that no reasonable jury could find that defendant did not violate the FDCPA.  In response, defendant argues that plaintiff cannot meet her burden to demonstrate the essential elements of her claims.  Further, defendant alleges that even if plaintiff could prove certain claims, plaintiff lacks standing to bring certain claims before the court and these claims should be dismissed for lack of subject matter jurisdiction.

On the other hand, in support of its cross-motion, defendant argues that it has produced irrefutable evidence that it did not violate the FDCPA. Specifically, defendant argues no reasonable jury could find either that the complained conduct was "in connection with the collection of a debt" or that defendant placed any calls in connection with Leavell's account after plaintiff suggested that defendant should stop calling. The court will address each cross-motion, and its corresponding arguments, separately and individually, as the court evaluates each claim.

**1.      Claims under the FDCPA "in connection with the collection of any debt"**

Plaintiff proceeds under four sections of the FDCPA: §§ 1692d, 1692d(5), 1692(6), and 1692e. To establish a claim under the FDCPA, a plaintiff must prove that: (1) defendant qualifies as a "debt collector" as defined in § 1692a(6)[2]; (2) defendant took the actions of which plaintiff complains "in connection with the collection of any debt"; and (3) the actions violated one the FDCPA's substantive provisions. See, e.g., Goss v. Receivables Performance Mgmt., No. 19-cv-0642, 2020 WL 2219048, at * 2 (N.D. Ill. July 7, 2020). The court will evaluate each substantive provision (§§ 1692d, 1692d(5), 1692(6), and 1692e) in turn.

First, however, before the court turns to plaintiff's substantive arguments, defendant argues that it that it is entitled to summary judgment on all counts because plaintiff has not met her burden to demonstrate that the alleged conduct was "in connection with the collection of a debt." Defendant argues that plaintiff does not provide evidence of such a connection; rather, plaintiff supports her claims only with her amended complaint and "the documents MRS produced in discovery." According to defendant, "neither of these sources of information contains evidence sufficient to sustain [plaintiff's] burden" because plaintiff "cannot avoid summary judgment by resting on her pleadings," citing Johnson v. Cambridge Indus., Inc., 325

---

[2] The parties do not dispute that defendant is a "debt collector" as contemplated by statute.

F.3d 892, 901 (7th Cir. 2003). Without more evidence, defendant argues, defendant is entitled to summary judgment on all counts.

The court disagrees with defendant's characterization of plaintiff's evidence. Instead, the court agrees with plaintiff that she has met her burden to show that defendant's conduct was "in connection with the collection of a debt." While it is true that plaintiff relies in part on defendant's answer—in which defendant itself admits that "it attempted to collect a debt" from plaintiff—plaintiff also relies on documents produced in discovery, which are not pleadings, and the circumstances of their production. Specifically, when plaintiff requested defendant to produce records of "any telephone call placed by Defendant for the purpose of collecting a debt," defendant produced records of the very telephone calls at issue. (Emphasis added). Such evidence is consistent with plaintiff's allegations, extends beyond the pleadings, and is sufficient to raise a genuine dispute on the issue, if not more.

The Seventh Circuit's reasoning in Gburek v. Litton Loan Servicing LP, 614 F.3d 380 (7th Cir. 2010), further supports the conclusion that plaintiff has met her burden. In Gburek, the court noted that "[n]either this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt." Id. at 384. Such a determination, the court reasoned, is based on a "commonsense inquiry" of objective fact that includes many factors, including the nature of the parties' relationship and the purpose and context of the communications.[3] Id at 385., citing Ruth v. Triumph Partnerships, 577 F.3d 790 (7th Cir. 2009); Horkey v. J.V.D.B. & Associates, 333 F.3d 769, 774 (7th Cir. 2003) (noting that sometimes it is "obvious" whether a communication is

---

[3] Because the Seventh Circuit has determined that the inquiry into whether a communication from a debt collector is "in connection with the collection of any debt" is an objective inquiry, Gburek, 614 F.3d at 385, this court rejects plaintiff's determination that "[t]he Court's inquiry is not on any consumer's recollection, but on the debt collector's intent," to the extent that plaintiff implies a subjective inquiry.

"in connection with the collection of a debt"); <u>Bailey v. Security Nat'l Servicing Corp.</u>, 154 F.3d 384 (1998). Such a determination does not require the production of extrinsic evidence. <u>Ruth</u>, 577 F.3d at 798.

Still, defendant emphasizes that plaintiff "could not identify the debt that defendant was allegedly attempting to collect from Leavell" in her deposition. Defendant argues that this failure is fatal to plaintiff's claims. The court, however, finds that plaintiff's failure to identify "<u>the</u> debt that MRS was attempting to collect" is immaterial. (Emphasis added). Section 1692c of the FDCPA does not require a plaintiff to know <u>the</u> specific debt that a debt collector seeks to collect; instead, §1692c(b) contemplates a debt collector communicating with a third party "in connection with the collection of <u>any</u> debt." 15 U.S.C. § 1692c(b) (emphasis added). Such an interpretation of § 1692c(b) is consistent with a clear reading the provision, which the Seventh Circuit indicates should not be interpreted narrowly. <u>See Gburek</u>, 614 F.3d at 382.

It is true that not every communication between a debt collector and a debtor will be "in connection with the collection of any debt." <u>See, e.g.</u>, <u>Bailey</u>, 154 F.3d 384. Here, however, plaintiff has provided at least enough evidence to avoid summary judgment in defendant's favor, if not certainly more. As such, the court will proceed to evaluate Counts IV–VII.

**2.      Count IV: Conduct with the "Natural Consequence" of Harassing, Oppressing, or Abusing Any Person (15 U.S.C. § 1692d)**

Count IV brings a claim under Section 1692d of the FDCPA, 15 U.S.C. § 1692d. Section 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person." In this case, plaintiff alleges that defendant violated § 1692d in three ways: (1) by calling plaintiff from the east coast while causing a local Chicago number to appear on her caller identification system, "so as to deceive Ms. Brown into

answering those calls"; (2) by placing certain telephone calls to plaintiff "only to disconnect those calls, without making any statement at all"; and (3) by continuing to call plaintiff even after she asked defendant "to cease and warned Defendant that she had an attorney who would intervene." Both plaintiff and defendant believe that they are entitled to summary judgment on these claims, which the court evaluates separately.

### a. Local phone numbers on plaintiff's caller identification system

The court first turns to plaintiff's assertion in Count IV that defendant's use of the local area code (312), rather than the east-coast area codes particular to the defendant's office locations, had the natural consequence of harassing, oppressing, or abusing her as a matter of law. Plaintiff argues that she would not have answered any calls if they had not caused her caller identification system to display a local area code. She maintains that these calls interrupted her self-employment, as well as that the calls were "annoying" and caused her stress to the point where she "shook," as supported by her own affidavit attached to her cross-motion.

In response, defendant urges the court to disregard plaintiff's affidavit because it contradicts prior deposition testimony. Also in response, and in support of its own cross-motion, defendant admonishes the court that the use of a local area code is not prohibited by the FDCPA and regardless, plaintiff does not have standing to bring this claim to begin with because plaintiff cannot establish an injury in fact with her claims concerning the local area codes.

### i. Standing

The court begins, as it must, with the question of plaintiff's standing. See, e.g., Nettles v. Midland Funding LLC, 983 F.3d 896, 899 (7th Cir. 2020). The Seventh Circuit has recently faced multiple cases concerning the issue of standing under the FDCPA. See Markakos v. Medicredit, Inc., 997 F.3d 778, 779 (7th Cir. 2021) ("In the last five months, we've held eight

times that a breach of the [FDCPA] does not, by itself, cause an injury in fact."). To establish standing under Article III, a plaintiff must show: (1) that the plaintiff suffered an injury in fact; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) that the injury is likely to be redressed by a favorable judicial decision. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). An injury in fact is an invasion of a legally protected interest that is concrete and particularized, actual and imminent, not conjectural or hypothetical. Id. at 1548.

Defendant uses plaintiff's deposition testimony to argue that plaintiff was not harmed by defendant's use of local area codes—that is, defendant argues that plaintiff cannot establish an injury in fact. To support its argument, defendant emphasizes plaintiff's deposition testimony, in which plaintiff indicated that she does not remember what information appeared on her caller identification system, she does not know where defendant was located when it placed these calls, and she does not know what telephone number defendant used to call her. Essentially, defendant argues that plaintiff lacks standing because, in her deposition, she offers no evidence of harm due to defendant's use of local area codes. Specifically, defendant appears to argue that plaintiff offers no evidence that she utilized the local area codes to her detriment, given that she cannot recall the specific area codes displayed.

An evaluation of the Seventh Circuit's case law on this point helps to clarify defendant's argument. As the Seventh Circuit emphasized in Markakos v. Medicredit, Inc., 997 F.3d 778 (7th Cir. 2021), "[t]he thrust of these cases is simple—the violation of an FDCPA provision, whether "procedural" or "substantive," does not necessarily cause an injury in fact." Id. at 780. "Rather, to fulfil[l] the injury in fact requirement, the violation must have "harmed or presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect." Id., citing Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 333 (7th Cir. 2019).

11

The Seventh Circuit has determined that several types of harms under the FDCPA are sufficiently concrete to establish an injury in fact. For instance, while a mere "informational injury," or the failure of a debt collector to provide certain information as required by the FDCPA, is insufficient to establish an injury in fact, Markakos, 997 F.3d at 780 (collecting cases), an informational injury can be sufficient when the omission deprived the plaintiff of a benefit. Casillas, 926 F.3d at 334. An informational injury under the FDCPA may be an injury in fact "if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." Markakos, 997 F.3d at 780. In other words, it matters how a plaintiff has utilized information required under the statute.

In the instant case, the court finds that plaintiff is not alleging a strictly informational injury. Rather, plaintiff primarily alleges harm in the form of annoyance and stress that has resulted from defendant's representation of information (i.e., information about its area codes). Plaintiff alleges that with different information, she would not have answered the calls and experienced such annoyance and stress. Thus, whether plaintiff can specifically remember what information appeared on her caller identification system, where defendant was located when it placed these calls, or what telephone number defendant used to call her is irrelevant. It is enough for this count that plaintiff generally remembers her annoyance in response to these calls, as well as her general reasons for accepting those calls.

The next problem for plaintiff is that the Seventh Circuit has determined that annoyance is not always enough to establish an injury in fact. Markakos, 997 F.3d at 781. See also Gunn v. Thrasher, Buschmann & Voekler, PC, 982 F.3d 1069, 1071–72 (7th Cir. 2020). The court has distinguished annoyance due to a debt collector's "otherwise proper communication," which is unlikely to establish an injury in fact, from annoyance due to "pestiferous text messages, spam

12

phone calls, and unwelcome faxes," which are likely to establish an injury in fact. Id. at 1071. The latter communications, the court reasons, are like the common law tort of intrusion upon seclusion, which encompasses "noises and aggravating intrusions," and are sufficiently concrete. Id. See also Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 463 (7th Cir. 2020), cert. denied, 141 S. Ct. 2552 (2021) (determining that "[a] few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable.").

Here, the court finds that plaintiff's general response to numerous calls from a debt collector, which she claims caused her annoyance and stress, is more like the aggravation that results from "pestiferous text messages, spam phone calls, and unwelcome faxes" than from otherwise proper debt collection letters. Thus, plaintiff has standing to allege harm due to defendant's use of local area codes, so long as she has properly alleged such harm.

### ii.     Sham affidavit rule

To the extent that plaintiff has alleged an injury in fact based on her allegations in her affidavit, the next question is whether the court is justified in relying on plaintiff's affidavit in the first place. Defendant argues that plaintiff's motion for summary judgment should be denied because it relies on an affidavit that contradicts plaintiff's prior deposition testimony. Defendant cites the Seventh Circuit, noting that "every federal court of appeals permits a judge to disregard a 'sham' affidavit—typically, an affidavit that contradicts prior deposition testimony." James v. Hale, 959 F.3d 307, 515–16 (7th Cir. 2020) (internal citations omitted).

The court agrees with defendant that plaintiff's deposition testimony, upon first look, contradicts the facts presented in plaintiff's post-deposition affidavit. But the court also agrees

with plaintiff that such seeming inconsistencies do not capture the full story. Defendant argues that plaintiff cannot allege harm based on defendant's use of local area codes where, based on her deposition testimony, she did not utilize those area codes. As discussed above, the fact that plaintiff, in her deposition, was unable to recall certain specific facts regarding defendant's area codes and her caller identification system is not inconsistent with her assertion that she generally remembers a local area code being displayed, and that defendant's use of use area codes caused her annoyance. Moreover, plaintiff's assertions of annoyance due to such calls is consistent with her amended complaint and her recall of the specific numbers upon a refreshed recollection.

Thus, the court rejects defendant's assertion that plaintiff has presented a sham affidavit, and determines that the court is justified in relying, in part, on plaintiff's assertions in her affidavit in its evaluation of plaintiff's standing.

### iii. Judgment as a matter of law

Given that plaintiff has standing to bring this claim, the court moves to the merits. The court is asked to determine whether plaintiff or defendant are entitled to judgment as a matter of law under §1692d. To resolve the issue in defendant's favor, the court must find that defendant's use of local area codes did not have the natural consequence of harassing, oppressing, or abusing plaintiff as a matter of law. To resolve the issue in plaintiff's favor, the court must find that plaintiff has met her burden to show the opposite.

It is true, as defendant says, that the use of local area codes to call consumers or third parties is not expressly prohibited by the FDCPA, 15 U.S.C. § 1692, but that does not mean that such conduct does not violate the statute. As other courts in this district have observed, "[t]here is a deep well of § 1692d cases to draw from" to evaluate whether a debt collector's conduct has the natural consequence of harassment. See, e.g., Leavell v. Fin. Recovery Servs., Inc., No. 20 C

14

6908, 2022 WL 1641721 (N.D. Ill. May 24, 2022). To determine the natural consequence of a debt collector's actions, courts consider a multitude of factors, including the volume, frequency, and persistence of calls, in addition to whether defendant continued to call after plaintiff requested it cease and whether plaintiff actually owed the alleged debt. Id. at *6. Further, in evaluating a claim under § 1692d, the court is limited to evaluating the objective "natural consequence" of a debt collector's actions—the collector's intent with such conduct is irrelevant. See Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769, 774 (7th Cir. 2003).

In this case, the court finds that a reasonable jury could not find that the "natural consequence" of defendant's use of local area codes was harassment. Plaintiff has produced no evidence to this effect. While defendant may have intended its use of local area codes to induce plaintiff to answer its calls—resulting in subjective annoyance and stress—defendant's intent is not relevant to plaintiff's claim under this section. Neither is plaintiff's subjective response dispositive. Therefore, with this point, plaintiff has not met her burden to suggest that the "natural consequence" of defendant's conduct was harassment as a matter of law, and plaintiff does not merit summary judgment on this point. Defendant's motion for summary judgment on Count IV is at least partially granted, given no reasonable jury could find, based on this evidence, that this conduct violated § 1692d.

b.      **Disconnection without any statements between parties to the call**

Plaintiff also contends that defendant's disconnection of certain telephone calls, without any statements between the parties, also had the natural consequence of harassment in violation of § 1692d. Defendant counters that plaintiff, not defendant, disconnected these calls, as indicated in its account notes and call logs.

Other courts in this district have been faced with similar claims.  For example, in
Michelson v. CBE Group, Inc., No. 13 C 50228, 2015 WL 2449038 (N.D. Ill. May 21, 2015), the
court granted summary judgment for the defendant after determining that a debt collector that
places calls that leave their recipients with silence on the other end (i.e., "abandoned calls") does
not violate § 1692d as a matter of law.  Id. at *6.  Moreover, in Leavell v. Fin. Recovery Servs.,
Inc., No. 20 C 6908, 2022 WL 1641721 (N.D. Ill. May 24, 2022), the court granted summary
judgment for the defendant on the plaintiff's § 1692d claim, which alleged similar conduct to this
case, including hanging up calls without leaving a voicemail.  Id. at *6.  The court determined
that the plaintiff did not present a developed argument, for it was "vague, not persuasive, and
lack[ed] citation to authority and the record."  Id.

Here, the parties dispute who disconnected the calls at issue, but it is not necessary to
resolve this fact to determine whether there is a genuine dispute that defendant violated § 1692d.
For defendant to succeed in its motion for summary judgment with this conduct, defendant must
show that—even if it did hang up on the calls, as plaintiff asserts—such disconnection did not
have the natural consequence of harassment as a matter of law.  For plaintiff to succeed, plaintiff
must show that—even if plaintiff hung up on the calls, as defendant asserts, and the call logs
suggest—she has provided enough evidence to show that such calls had the natural consequence
of harassment as a matter of law.  Clearly, plaintiff cannot succeed in such an argument; there is
no genuine dispute of material fact if plaintiff, not defendant, disconnected the call.  It is not
harassment for a debt collector to place a call and have the recipient hang up on them.

The more difficult issue is whether there is a genuine dispute of material fact under
defendant's theory, when the facts are viewed in the light most favorable to plaintiff—in other
words, if defendant disconnected the calls.  Given the similarity to the abandoned calls in

16

Michaelson and abandoned voicemails in Leavell, the court finds that there is no genuine dispute here because no reasonable jury could find, based on this evidence, that disconnecting two calls without making a statement had the "natural consequence" of harassment under § 1692d. Defendant's motion is granted regarding this claim.

### c. Continued calling even after request to cease and warning of attorney intervention

The last remaining consideration in these cross-motions for summary judgment on Count IV is plaintiff's claim that defendant continued to call plaintiff even after a warning of attorney intervention and a request to cease. To succeed, defendant must show that plaintiff has not provided enough evidence to show that such conduct has the natural consequence of harassment under § 1692d as a matter of law. For plaintiff to succeed on her cross-motion, she must show that she has provided such evidence as a matter of law.

Each party's argument heavily depends on whether defendant continued to call plaintiff after a request to cease. Plaintiff admits in her deposition that she did not request that defendant cease calling during the call on October 27, 2020, when she stated, "I will have my attorney contact you guys [and] my attorney will be contacting you guys, thank you, cause you're violating the FCRA."[4] After the October 27 call, defendant called twice on October 28, 2020, and eight additional times between October 8, 2020, and November 11, 2020. Defendant argues, and plaintiff does not provide evidence to refute, that plaintiff requested that defendant cease calling only on November 11, 2020, when plaintiff stated, "I've asked you guys now twice not to

---

[4] In her deposition, regarding the October 27 call, plaintiff stated, "I didn't hear myself say 'Stop calling,' but I told them before to stop calling." In her deposition and elsewhere, plaintiff provides no evidence regarding when, if ever, she told defendant to cease calling before the October 27 call, beyond asserting that she is "sure" she did. This assertion is insufficient evidence to raise a genuine dispute, especially in light of the undisputed fact that plaintiff had only the two conversations with defendant.

call this phone . . . so now because I've asked you guys that now twice not to call and you guys continue to call . . . I will be forwarding this to an attorney." It is undisputed that defendant did not call plaintiff after this date.

As discussed above, in determining the natural consequence of a debt collector's conduct, courts consider the volume, frequency, and persistence of calls, as well as whether the collector continued to call after the debtor requested it cease, among other factors. Leavell, No. 20 C 6908, 2022 WL 1641721, at *6. In the instant case, plaintiff expressed her annoyance with defendant's calls on October 27, but one individual's annoyance does not suggest that the objective natural consequence of continued calling is harassment, especially where the recipient has not expressly requested that the debt collector should stop calling. Plaintiff provides no evidence that the natural consequence of defendant's calls was harassment. Instead, plaintiff's weak argument hinges on her October 27 warning regarding potential attorney intervention. Based on this evidence, no reasonable jury could find that defendant's 11 later calls call had the natural consequence of harassment under § 1692d. Thus, defendant succeeds on its motion for summary judgment on Count IV because there is no genuine dispute of material fact regarding any of plaintiff's claims under § 1692d.

> **3.** **Count V: Specific Prohibition Against Repeated and Continuous Telephone Calls with the Intent to Annoy, Abuse, or Harass Any Person (15 U.S.C. § 1692d(5))**

While § 1692d generally provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person," the subsections of § 1692d contain specific prohibitions. For example, § 1692d(5) specifically prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Count V brings a claim

under § 1692d(5) of the FDCPA, 15 U.S.C. § 1692d(5), in which plaintiff alleges that defendant violated § 1692d(5) in two ways: (1) by placing certain telephone calls to plaintiff "only to disconnect those calls, without making any statement at all," and (2) by continuing to call plaintiff even after she asked defendant "to cease and warned Defendant that she had an attorney who would intervene."

> ### a.     Disconnection without any statements between parties to the call

As discussed above, the parties dispute who disconnected two telephone calls without making any statement. In this count, however, rather than alleging that such conduct generally violates § 1692d, plaintiff alleges that it violates § 1692d(5) specifically. Section 1692d(5) differs from § 1692d because it includes an intent inquiry. See Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769, 774 (7th Cir. 2003). To succeed on her cross-motion for summary judgment on this issue, plaintiff must show that defendant caused her telephone to ring repeatedly or continuously with the intent to annoy, abuse, or harass—even if plaintiff hung up on defendant after answering, as defendant asserts. For defendant to succeed on its motion, defendant must show that plaintiff has not provided sufficient evidence to suggest that defendant violated § 1692d(5). The primary and decisive issue in both motions is whether defendant intended to annoy, abuse, or harass plaintiff with its calls.

This is not a novel issue in this district. For example, in Bennett v. Arrow Fin. Servs., LLC, No. 02 C 6746, 2004 WL 830440 (N.D. Ill. Apr. 15, 2004), the court found that the defendant debt collector did not violate § 1692d(5) because the plaintiff did not show intentional harassment. Id. at *2. The court reasoned that "[t]wo completed calls, spaced a couple of weeks apart, . . . are hardly intentional harassment." Id. Intent can be more readily inferred when, for

example, a creditor repeatedly calls a consumer "at odds hours of the night and hang[s] up when the consumer answers." Id.

The court agrees with the court's reasoning in Bennett. Two disconnected but completed calls over the course of few weeks, without more, are not evidence of intentional harassment. Repeated disconnected calls, on the other hand, may be probative of intent depending on the circumstances. If plaintiff had provided evidence that defendant intentionally disconnected the two calls at issue, then defendant's motion for summary judgment would be denied; there would be a genuine dispute concerning intent. Plaintiff, however, has not provided any evidence that defendant intentionally disconnected the calls beyond her own pleadings and affidavit. While the allegations in plaintiff's affidavit are sufficient to establish standing here, they are not sufficient to avoid judgment as a matter of law. Defendant is entitled to summary judgment on this point.

Plaintiff is thus not entitled to judgment as a matter of law on this issue for two reasons: (1) plaintiff has not provided any evidence that defendant, not plaintiff, disconnected the calls, and (2) plaintiff has not provided any evidence that defendant intended to harass her by disconnecting the calls.

### b. Continued calling even after request to cease and warning of attorney intervention

The problem for plaintiff in this argument, as with the argument above, is intent. For plaintiff to succeed on her cross-motion, she must prove that, upon this evidence, no reasonable jury could find that defendant's continued calling after the October 27 call, discussed in detail above, was not intentional harassment. Defendant, however, succeeds on its cross-motion if it proves that plaintiff has not provided sufficient evidence of intentional harassment or annoyance.

20

In <u>Leavell v. Fin. Recovery Servs., Inc.</u>, No. 20 C 6908, 2022 WL 1641721 (N.D. Ill. May 24, 2022), the court granted summary judgment for the defendant on the plaintiff's § 1692d(5) claim, reasoning that there was no evidence supporting an intent to annoy, and "[i]nferring so is speculation." <u>Id.</u> at *4. The court emphasized that the debt collectors were "not excessive, rude, or abusive, and call transcripts show that they never got past introductions." A total of 15 calls over a two-month period, with only two calls answered, were not sufficient to show intent. <u>Id.</u> <u>See also</u> <u>Carman v. CBE Grp., Inc.</u>, 782 F. Supp. 2d 1223–32 (D. Kan. 2011) (granting summary judgment for a debt collector who called 149 times in a two-month period).

The court agrees with the court's reasoning in <u>Leavell</u> and rests on its similarities to this case. Plaintiff has provided no evidence that defendant's representatives were excessive, rude, or abusive. Defendant called plaintiff 17 times to <u>Leavell</u>'s 15 times, with only four answered calls. Of the four answered calls, the parties engaged in conversation only twice. Unlike <u>Leavell</u>, in this case, plaintiff went beyond introductions to express her intent to contact her attorney. The court agrees with plaintiff that this expression manifested her annoyance, and it is undisputed that defendant continued to call after this expression. However, the court does not find that plaintiff provided sufficient evidence of intentional harassment. Thus, defendant is entitled to summary judgment on this point.

Because the court finds that defendant is entitled to summary judgment on both claims under § 1692d(5) of the FDCPA (i.e., the disconnected calls and the continued calling), defendant's cross-motion for summary judgment on Count V is granted in whole, and plaintiff's cross-motion is accordingly denied.

**4.      Count VI: Specific Prohibition Against Telephone Calls Without "Meaningful Disclosure" of the Caller's Identity (15 U.S.C. § 1692d(6))**

Count VI brings a claim under § 1692d(6) of the FDCPA, 15 U.S.C. § 1692d(6). As discussed above, while § 1692d generally provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person," the subsections of § 1692d contain specific prohibitions. Section 1692d(6) specifically prohibits "the placement of telephone calls without meaningful disclosure of the caller's identity." Plaintiff alleges that defendant violated § 1692d(6) in two ways: (1) placing certain telephone calls to plaintiff and disconnecting either prior to or as soon as plaintiff answered the call, and (2) by using local area codes to deceive plaintiff into answering.[5] Plaintiff argues that "common sense dictates that Defendant did not provide 'meaningful disclosure of [its] identity'" when conducting its calls in such a manner.

Again, because Leavell is instructive on both aspects of this claim, the court will consider them together. In Leavell, the court granted summary judgment for the defendant under § 1692d(6). No. 20 C 6908, 2022 WL 1641721, at *5 (N.D. Ill. May 24, 2022). The plaintiff alleged that the debt collector failed to provide a "meaningful disclosure" of its identity for the purpose of harassment when it reached voicemail but did not leave a message. Id. In rejecting this argument, the court cited Johnson v. Ditech Fin. LLC, No. 15 C 996, 2017 WL 3642061, at *3 (N.D. Ill. Aug. 24, 2017), which determined that, "failure to leave a voicemail, absent more, is not the type of harassing conduct contemplated by the statute." Leavell, No. 20 C 6908, 2022 WL 1641721, at *5. On the other hand, the Leavell court also cited a case which suggested that a defendant's steps "to hide its number or identity on caller identification systems" may be significant in evaluating the debt collector's meaningful disclosure. Id. at *5, citing Kuberski v.

---

[5] Plaintiff has standing to bring this claim for reasons discussed in section II.a.i.

Cred X Debt Recovery, LLC, No. 11 C 3247, 2012 WL 2943726, at *9–10 (D. Colo. July 2, 2012).

Given the similarity between defendant's allegedly disconnected calls in this case and the Leavell defendant's failure to leave a voicemail, the court finds that plaintiff has failed to produce sufficient evidence to suggest that defendant shielded its identity with the intent to harass plaintiff. Plaintiff does not provide evidence, beyond her own affidavit, that defendant disconnected the call. Moreover, she does not provide evidence to suggest that even if defendant did disconnect the call, such actions were intended to harass. Because defendant genuinely disputes the circumstances of the disconnection, plaintiff is not entitled to judgment as a matter of law on this point.

Plaintiff's argument for summary judgment is stronger on her second point: that defendant's use of local area codes, rather than the out-of-state area codes particular to its office locations, was communication without meaningful disclosure of its identity with the intent to harass. This argument is stronger because, as the Leavell court suggests, such use is evidence of defendant's steps to hide its identity and suggests its intent to harass plaintiff under § 1692d(6). Because plaintiff has raised at least a genuine dispute that the use of local area codes is a violation of under § 1692d(6), defendant is not entitled to summary judgment on Count VI, and defendant's cross-motion on Count VI is denied.

The court also denies plaintiff's motion for summary judgment on Count VI. Despite the local area codes displayed on plaintiff's caller identification system, the parties do not dispute that defendant is the exclusive owner of the telephone numbers used to place the calls, even if it does not have offices in Chicago. If plaintiff had placed a call to these numbers, such a call would have connected plaintiff with defendant. Therefore, a reasonable jury could find that,

regardless of area code, defendant made a meaningful disclosure of its identity because it displayed true and accurate numbers that belong to defendant, and such numbers would have connected plaintiff with defendant if plaintiff had sought further information regarding its identity.

5.      **Count VII: False, Deceptive, or Misleading Representations ((15 U.S.C. § 1692e)**

Lastly, Count VII brings a claim under § 1692e of the FDCPA, 15 U.S.C. § 1692e. Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation." Plaintiff argues that defendant violated § 1692e by placing telephone calls to plaintiff from the east coast while causing a local number to appear on plaintiff's caller identification system "so as to deceive [plaintiff] into believing that a friend or relative was calling her so that she would answer those calls."

Plaintiff argues that this count is conclusively established under Knoll v. Allied Interstate, Inc., 502 F. Supp. 2d 943 (D. Minn. 2007).[6]  In Knoll, a debt collector caused the false name "Jennifer Smith" to be displayed on a debtor's caller identification system, rather than the company's name or number, despite the fact that no one named "Jennifer Smith" worked at the company.  Id. at 945.  The court held that using such a false name is a plausible violation of § 1692e.  Id. at 948.  Primarily, the court was concerned with the potential for debt collectors to use false names to deceive debtors into thinking that a higher authority, like a governmental agency, was calling, as well as other "more draconian debt collection tactics."  Id.  While the court rejected a narrow standard based on these factors, the court noted that the deceptive tactics

---

[6] Plaintiff has standing to bring this claim for reasons similar to those discussed in section II.a.i.

24

contemplated by § 1692e include misrepresentations of the amount of debt, the consequences of nonpayment, and the rights of the contacted debtor.  Id.

Plaintiff, however, boils down Knoll to a single sentence: a defendant violates § 1692e by using a caller identification device to mask that a debt collector is calling.  As defendant notes, § 1692e is not that simple, and the facts of Knoll are distinguishable from the facts of this case. Numerous courts have held that the use of local area codes to call debtors does not violate the FDCPA.  See, e.g., Mendoza v. Diversified Consultants, Inc., 2019 WL 2524117, at *3 (E.D. Pa. June 18, 2019); Bermudez v. Diversified Consultants Inc., 2019 WL 415569, at *3 (E.D. Pa. Feb. 1, 2019); Bien v. Stellar Recovery, Inc., 2015 WL 5554670, at *1, 3 (D.R.I. Sep. 21, 2015); Scheffler v. Integrity Fin. Partners, Inc., 2013 WL 9768539, at *4 (D. Minn. Oct. 28, 2013). These courts have relied on the distinction between Knoll and the use of local area codes: displaying telephone numbers which otherwise belong to a debt collector is distinct from displaying a false name.  The latter is misleading, whereas the former is not.

Yet defendant cites no case which is binding upon this court, and the court would emphasize that § 1692e prohibits debt collectors from using not just "any false, deceptive, or misleading representation," but any "false, deceptive, or misleading representation or means." (Emphasis added).  Plaintiff raises at least a genuine dispute that defendant's use of local area codes is a means of contacting consumers which is false, deceptive, or misleading.  As plaintiff alleges, she would not have answered the call but for the means of contact.  Therefore, defendant's motion on this count must be denied.  Given the number of cases that have gone the other way, and the persuasiveness of their reasoning, plaintiff's motion must similarly be denied on this count.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment (Doc. 33) is denied in whole, and defendant's motion for summary judgment (Doc. 34) is granted in part and denied in part. The court grants summary judgment for defendant on Counts IV and V.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

DATE: September 9, 2022